J-A18029-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

IN THE INTEREST OF: A.M.B.

APPEAL OF: A.M.B.

:
:
:
:
:
:
:
:
:
:
:
:

IN THE SUPERIOR COURT OF
PENNSYLVANIA

No. 859 WDA 2020

Appeal from the Order Entered July 29, 2020
In the Court of Common Pleas of Bedford County Criminal Division at
No(s):  CP-05-JV-0000032-2011

BEFORE:  OLSON, J., NICHOLS, J., and MUSMANNO, J.

MEMORANDUM BY NICHOLS, J.:　　　　　　　**FILED:  September 20, 2021**

Appellant A.M.B. appeals from the order extending his involuntary inpatient commitment pursuant to 42 Pa.C.S. §§ 6401-6409 (Act 21). Appellant claims that the Commonwealth failed to establish that he continues to have serious difficulty controlling sexually violent behavior.  We affirm.

The trial court set forth the procedural history of this appeal as follows:

On September 2, 2011, the [c]ourt adjudicated [Appellant] delinquent of committing acts that would constitute indecent assault, pursuant to 18 Pa.C.S. § 3126(a)(6), if committed by an adult.  The adjudication stemmed from Appellant's sexual assault of an intellectually disabled twenty-six-year-old female.[1]  On July 18, 2014, the trial court held a hearing pursuant to 42 Pa.C.S. § 6403 . . . .  Following that hearing, the trial court found that the Commonwealth established, by clear and convincing evidence, that Appellant had a conduct disorder, which was a personality disorder resulting in difficulty controlling sexually violent behavior

---

[1] The offense occurred on March 17, 2011.  Appellant was seventeen years old at the time of the offense and was twenty-six years old at the time of the Act 21 hearing in this appeal.

and which made it likely he will engage in acts of sexual violence. The trial court ordered Appellant to be committed for involuntary treatment for one year.

This matter was reviewed annually as required by law and Orders were entered continuing the commitment following hearings on July 1, 2015, May 26, 2016, May 27, 2017, June 21, 2018 and June 7, 2019. Appellant did not appeal any of these Orders.

. . .[2] Appellant filed a motion to vacate his [sexually violent delinquent child (SVDC)] designation and commitment. Following a hearing on January 4, 2019, the trial court denied Appellant's motion requesting release from commitment. Appellant appealed to the Pennsylvania Superior Court. By Order filed July 13, 2020, the Superior Court affirmed the trial court's Order. [**Interest of A.M.B.**, 121 WDA 2019, 2020 WL 3959205 (Pa. Super. filed July 13, 2020) (unpublished mem.) (rejecting Appellant's constitutional challenge that Act 21 was punitive and violated due process in using a clear and convincing burden of proof).]

Regarding the instant appeal, the annual review hearing was scheduled for May 28, 2020. Appellant requested and was granted, a continuance. The rescheduled hearing was held on July 28, 2020. . . .

Trial Ct. Op., 9/22/20, at 1-2.

The trial court summarized the Commonwealth's evidence at the July 28, 2020 hearing as follows:

The Commonwealth called Dr. Robert Stein. Dr. Stein has been a member of the Sexual Offender's Assessment Board since 1998 and was recognized by this Court as an expert in the field of assessment and treatment of sexual offenders, without objection by Appellant. Dr. Stein conducted Appellant's original assessment in 2014 and has done his annual review assessment for each of

_____

[2] We omit the trial court's reference to a prior three-judge panel decision that this Court withdrew after granting reargument as it is not relevant to the disposition of this appeal. We note that this Court issued an *en banc* opinion in that case. **See In re J.C.**, 232 A.3d 886, 891-92 (Pa. Super. 2020) (*en banc*).

the subsequent six (6) years. For the instant annual review hearing, Dr. Stein reviewed the monthly progress reports from the Sexual Responsibility and Treatment Program (hereinafter "SRTP[" or the program]) and the Ten Month Comprehensive Review. Dr. Stein testified that based upon his behavior over this year and previous years, Appellant carries a diagnosis of Anti-social Personality Disorder, which involves a condition involving long-term and persistent violation of social norms, social rules which goes back many years. Appellant is also diagnosed with Other Specified Paraphilic Disorder, including exhibitionism, exposing one's self, frottage and non-consent, Conduct Disorder, Schizotypal Personality Disorder and Other Specified Depressive Disorder, all of which are based on Appellant's behavioral history, including past behaviors at the SRTP. Dr. Stein was of the opinion that this collection of psychiatric diagnoses provides sufficient evidence of a mental abnormality that predisposes [Appellant] to the commission of sexual violent acts.

Dr. Stein indicated that if he was released at this time, Appellant would be at high risk of committing another sex offense because he does not yet possess the coping strategies and coping skills to succeed in the unstructured community. Even while still in a secure, highly structured treatment setting, Appellant has not been able to maintain emotional consistency. Dr. Stein noted that during the past year, Appellant has continued to struggle with any kind of consistency with investment in treatment, remains emotionally volatile and is not ready to move forward. Appellant's progress has been slowed by his emotional reactivity and its resulting difficulties with accepting feedback, which results in treatment resistance and defiance. Dr. Stein testified that in his opinion, Appellant meets the criteria for further involuntary commitment. However, Dr. Stein recognized that Appellant has made the most progress this past year [compared to] previous years. Appellant has not been physically aggressive against other persons in the past year and the sexual rule violations have been relatively minor compared to previous years.

The Commonwealth further called Dr. Melissa Nossal, the Clinical Director for the SRTP at Torrance State Hospital. This [c]ourt[, over Appellant's objection,] recognized Dr. Nossal as an expert in the field of clinical psychology in the area of sexual offending behavior and treatment. Dr. Nossal testified as to Appellant's progress within the past year. Dr. Nossal identified several areas where Appellant needs to improve upon in order to progress to the next level of this treatment, including accepting feedback and

understanding his internal state. Dr. Nossal explained that the program essentially contains a total of eight (8) levels, with Appellant currently being on level 2. Dr. Nossal was optimistic that Appellant will progress to the next level, especially in light of his maintaining his level this past year even in light of some setbacks with a few episodes of aggression towards property. Dr. Nossal testified that Appellant was able to manage himself more skillfully this year than in the past. Dr. Nossal also testified that Appellant continues to meet the criteria for Other Specific Paraphilic Disorder, with elements of exhibitionism, frottage and non-consent, Anti-Social Personality Disorder and Schizotypal Personality Disorder.

Trial Ct. Op. at 3-5.[3]

At the conclusion of the hearing, the trial court stated that it found Dr. Stein's opinions were "especially relevant." N.T. Act 21 Hr'g at 71. The trial court emphasized that Dr. Stein's opinion that Appellant's diagnosis "make[s] it more likely at this point that [Appellant] would have engaged in an act of sexual violence if released unsupervised into an unstructured community." *Id.* The trial court also credited Dr. Stein's opinion that Appellant remained

_____

[3] Appellant attended the hearing by video conferencing due to the COVID-19 restrictions at Torrance State Hospital. **See** Trial Ct. Op. at 3 n.1. Appellant did not present evidence at the hearing but made a brief statement to the court. **See** N.T. Act 21 Hr'g, 7/28/20, at 69. Appellant, through cross-examination, elicited testimony concerning the program's success rate and the possibility that Appellant's "institutionalization" during his six-year commitment in the SRTP contributed to his setbacks. **See id.** at 17, 23-25, 51. Specifically, Dr. Stein noted that since 2003, only two individuals he was involved with successfully completed the program. **Id.** at 17. Dr. Nossal stated that since 2003, seven of seventy-two individuals successfully completed the program. **Id.** at 25, 43. Both Dr. Stein and Dr. Nossal acknowledged their concerns about institutionalization. **Id.** at 18, 20-21, 51.

in need of involuntary treatment "so that he can progress in that treatment."[4] *Id.* The trial court entered the order committing Appellant to an additional year of involuntary inpatient treatment on the following day.

Appellant timely filed a notice of appeal and complied with the trial court's order to submit a Pa.R.A.P. 1925(b) statement. The trial court filed a responsive opinion.

Appellant presents the following issue for our review:

> Whether the trial court erred in determining by clear and convincing evidence that Appellant continues to have serious difficulty controlling sexually violent behavior while committed for inpatient treatment due to a mental abnormality or personality disorder that makes him likely to engage in an act of sexual violence and, further, ordering that Appellant be committed for addit[i]onal involuntary treatment for one (1) year to the [SRTP] on the campus of Torrance State Ho[sp]ital?

Appellant's Brief at 8 (formatting altered).[5]

Appellant challenges the sufficiency of the evidence asserting that the Commonwealth did not meet its burden for extending his involuntary inpatient commitment. *Id.* at 6, 28. Specifically, Appellant challenges the evidence that he continued to have serious difficulty controlling sexually violent behavior while committed for inpatient treatment. *Id.* at 25. Appellant claims

---

[4] The trial court also acknowledged the evidence that Appellant had made progress, that he had "some, maybe minor set[b]acks," and that the Appellant's most recent year in treatment "appears to have been better" than prior years. N.T. Act 21 Hr'g at 71-73. The court also noted its concern about Dr. Stein's and Dr. Nossal's testimony regarding the program's discharge rates. *Id.* at 73.

[5] The Commonwealth did not file a brief.

that "there were zero indications that [he] had difficulty in controlling sexually violent behavior." *Id.* at 26. To the contrary, Appellant asserts that the Commonwealth's witnesses and the trial court acknowledged that he made progress and only suffered "minor setbacks." *Id.* at 26, 28.

Appellant further contends that the trial court erred in relying on Appellant's failure to advance in the program. *Id.* at 26. Appellant emphasizes the Commonwealth's witnesses testified to the program's "abhorrently dismal success rate" and the possibility that "Appellant is institutionalized due to his exceptionally long period of commitment." *Id.* at 27. Appellant adds that his setbacks concerned "minor displays of frustration" that resulted from the program's unattainable and ill-defined expectations and his feelings of being "trapped in a system he is unable to extricate himself" in the nine years since his offense. *Id.* at 28.

By way of background, our Supreme Court has explained that "Act 21 governs situations where certain sexually violent persons may be involuntarily committed for treatment and applies under circumstances described in the Juvenile Act, 42 Pa.C.S. §§ 6301-6375." *In re H.R.*, 227 A.3d 316, 319 (Pa. 2020). When the Sexual Offender Assessment Board determines that an SVDC is in need of involuntary treatment before his twenty-first birthday, the trial court, following a hearing pursuant to Section 6403, may involuntarily commit the individual for one year. *Id.* at 319-20.

Thereafter, Section 6404(b) provides for an annual review of the individual's commitment, *id.* at 320, and states, in relevant part:

> If the court determines by clear and convincing evidence that the person continues to have serious difficulty controlling sexually violent behavior while committed for inpatient treatment due to a mental abnormality or personality disorder that makes the person likely to engage in an act of sexual violence, the court shall order an additional period of involuntary inpatient treatment of one year; otherwise, the court shall order the department, in consultation with the board, to develop an outpatient treatment plan for the person.[6]

42 Pa.C.S. § 6404(b)(2).

> This Court has explained:

> [I]t is the Commonwealth that bears the burden of showing by clear and convincing evidence that the person has a mental abnormality or personality disorder which results in serious difficulty in controlling sexually violent behavior that makes the person likely to engage in an act of sexual violence. If the Commonwealth meets this burden, the court is to enter an order committing the person to inpatient treatment for a period of one year. Our Supreme Court has defined clear and convincing evidence as "testimony that is so clear, direct, weighty, and convincing as to enable the trier of fact to come to a clear conviction, without hesitation, of the truth of the precise facts in issue." Thus, the clear and convincing evidence test "has been described as an 'intermediate' test, which is more exacting than a preponderance of the evidence test, but less exacting than proof beyond a reasonable doubt." Moreover, "in conducting [a] sufficiency review, we must consider the evidence in the light most favorable to the Commonwealth, which prevailed upon the issue at trial." With regard to sexually violent predator assessments, "[t]he task of the Superior Court is one of review, and not of weighing and assessing evidence in the first instance."

---

[6] The **H.R.** Court further noted that the General Assembly added provisions for involuntary outpatient treatment in 2011. **H.R.**, 227 A.3d at 320. The involuntary outpatient provisions apply "if the court determined after its annual review hearing that the person no longer has serious difficulty in controlling sexually violent behavior in an inpatient setting . . . ." **Id.** (citation omitted).

*J.C.*, 232 A.3d at 894 (citations omitted).

Instantly, our review of the record, Appellant's arguments, and the trial court's reasoning compels us to conclude that Appellant's sufficiency claim merits no relief. At the July 28, 2020 hearing, Dr. Stein noted that for several years, Appellant had been "stuck" at Level 2-1, the second lowest of the eight levels of the program. N.T. Act 21 H'rg at 9. Appellant achieved Level 2-2 in 2019 and was progressing toward Level 2-3. *Id.* at 10.

Dr. Stein offered the following opinion on the likelihood that Appellant would engage in acts of sexual violence:

> We focus on the more recent activity. We don't just simply forget about the past, the distant past, but our focus is more on recent activities. This has been one of his better years in the facility and I'm hopeful it continues. However, if he was released at this time, it is my opinion that []he would not have the coping strategies, coping skills to succeed in the community, and he would be at a high risk of committing another sex offense because in the secure treatment facility, the SRTP, he has not been able to maintain any consistent, even emotional consistency.

*Id.* at 12-13.

Dr. Nossal, in relevant part, discussed Appellant's setbacks, which concerned two "primary incidents" one in May 2019 and one in May 2020. *Id.* at 37. In the May 2019 incident, Appellant threw "some objects," "verbally escalated," and made threats. *Id.* The May 2019 incident did not result in the use of restraints. *Id.* In the May 2020 incident, Appellant "became agitated, was tearing paper, [and] became verbally aggressive," which

resulted in a temporary restriction of his privileges, or an "administrative hold." *Id.*

Additionally, Dr. Nossal discussed Appellant's initial deceptiveness on a polygraph. *Id.* at 52-52. Dr. Nossal noted that Appellant eventually reported that he engaged in masturbatory conduct in his room with his privacy blinds open. *Id.* The doctor stated that Appellant's conduct was concerning because "it would be like engaging in sexual behaviors with your window open at home." *Id.* at 52. Dr. Nossal explained that Appellant needed to be consistent in the reporting of his urges, to be more receptive to feedback by understanding his own behaviors, and to have a "non-deceptive" polygraph. *Id.* at 41, 53.

Here, the trial court credited Dr. Nossal's opinions regarding Appellant's treatments needs. *See* Trial Ct. Op. at 5. The trial court also credited Dr. Stein's opinion concerning the continuing likelihood that Appellant would commit sexually violent acts if released unsupervised into the community. *See* N.T. Act 21 Hr'g at 71. The trial court, as finder of fact, was entitled to credit these opinions, and this Court will not reassess or reweigh the evidence. *See J.C.*, 232 A.3d at 894.

Moreover, Appellant's argument that the Commonwealth failed to establish the elements of Section 6404(b) essentially focuses on the fact that his setbacks were "minor," did not involve sexually violent behavior, and could have resulted from his "institutionalization" or frustration with an ineffective program. However, this Court has not required evidence of overtly sexually

violent acts to support a finding that an individual poses a high risk of reoffending and when reviewing the sufficiency of the evidence pursuant to Section 6404(b)(2). *See J.C.*, 232 A.3d at 897-98 (rejecting an appellant's sufficiency claim based upon the Commonwealth's failure to produce evidence that the appellant touched anyone inappropriately since his adjudication of delinquency).

Accordingly, based upon the evidence presented at the hearing and our standard of review, we conclude that the Commonwealth provided clear and convincing proof that Appellant continues to have serious difficulty in controlling sexual violent behavior while committed for inpatient treatment. *See id.* For these reasons, Appellant's challenge to the sufficiency of the evidence for recommitment under Section 6404(b)(2) fails.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/20/2021

- 10 -